UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA, ex rel.
KAREN BRINKLEY and
CAROL WHETSTONE,                                                                    Plaintiffs,

v.                                                                 Civil Action No. 3:15-cv-180-DJH

UNIVERSITY OF LOUISVILLE, et al.,                                                   Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Karen Brinkley and Carol Whetstone brought this *qui tam* action under the False Claims Act alleging that the defendants—the University of Louisville, University of Louisville Foundation, Inc.; University of Louisville Research Foundation, Inc.; and eight University researchers—made false claims to obtain research grants and unlawfully terminated Plaintiffs' employment at the University after they complained of the wrongdoing. University of Louisville Foundation, Inc. was dismissed by stipulation (Docket No. 17); the remaining defendants seek dismissal of the amended complaint under Rule 12(b)(1) and (6). (D.N. 11) During a hearing on the motion held November 8, 2016, Plaintiffs conceded that their state-law whistleblower and wrongful-discharge claims should be dismissed. (*See* D.N. 30, PageID # 1072-73) Having considered the parties' initial and supplemental briefs, as well as the oral argument presented at the hearing, the Court will dismiss the remaining claims as well.

**I.       STANDARD**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

1

570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

II.   ANALYSIS

The first three counts of the amended complaint allege that the defendants obtained federal grants through the use of false records or statements and failed to refund those monies to the government, all in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1). (*See* D.N. 9, PageID # 538-39)  The plaintiffs also assert a claim of retaliation under § 3730(h) of the FCA, alleging that they were discriminated against and ultimately fired for having complained of the defendants' wrongdoing. (*See id.*, PageID # 540)  Although each of these claims is asserted against "Defendants" generally (*id.*, PageID # 538-40), the Court will separately address the claims against the entity and individual defendants.

    A.   University of Louisville and Research Foundation

        1.   **False Claims**

In Counts I through III of their amended complaint, the plaintiffs allege violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G). (D.N. 9, PageID # 538-39)  Those subsections subject to liability

> any person who—
>
> (A)   knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

. . .

    (G)    knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]

31 U.S.C. § 3729(a)(1). Pursuant to § 3730(b) (the mechanism employed here), a plaintiff "may bring a civil action for a violation of section 3729" on her own behalf and on behalf of the United States. (*See* D.N. 1, PageID # 515, 538-39)

    A state or state agency is not a "person" for purposes of a *qui tam* action under the FCA. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787-88 (2000). The defendants maintain that the University and the Research Foundation are state agencies and thus cannot be held liable here. (D.N. 11-1, PageID # 976-78; D.N. 24, PageID # 1035-39) This Court has previously found that both entities are state agencies relieved of FCA liability. *See United States v. Solinger*, 457 F. Supp. 2d 743, 755 (W.D. Ky. 2006). In the defendants' view, the Court's analysis should begin and end with *Solinger*. (*See* D.N. 24, PageID # 1037 (asserting that *Solinger*'s conclusion regarding these defendants' status as arms of the state "is dispositive here")) But the Court "is not bound by the decisions of its fellow District Judges." *Krumpelbeck v. Breg, Inc.*, 759 F. Supp. 2d 958, 966 n.7 (S.D. Ohio 2010) (citing *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991)).

    Moreover, while Judge Heyburn's reasoning in *Solinger* appears sound, the Sixth Circuit has since adopted a test for determining whether an entity is an arm of the state—i.e., "a state

agency excluded from liability under the FCA." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015).[1] That test requires the Court to consider four factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Id.* (quoting *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005)). These factors are not "a checklist that must be satisfied"; rather, they are to be "weighed and balanced against each other based on the unique circumstances of the case." *Id.* at 778 (citations omitted). However, "the state's potential liability" is "the 'foremost factor'" and thus "must be given substantial weight." *Id.* at 776 (quoting *Ernst*, 427 F.3d at 359). Here, the *Ernst* factors indicate that both the University and the Research Foundation are arms of the state.

### a. Whether the State Is Potentially Liable

Unlike in *Kreipke*, there does not appear to be any state statute expressly providing that a judgment against the University of Louisville would be paid by the state. *Cf. id.* Nevertheless, the University is "a state institution" whose property legally belongs to the Commonwealth, Ky. Rev. Stat. § 164.870, and it is supported by state funds. *See* Ky. Rev. Stat. § 164.026 (declaring that "support of the University of Louisville is a public purpose for which public money may be validly expended"); *see also* Ky. Rev. Stat. § 164A.550(2) (describing University of Louisville, among others, as a "public supported [sic] postsecondary educational institution[]"). Thus, Kentucky is potentially liable for a judgment against the University. *See Kreipke*, 807 F.3d at 776 ("'[I]f a state's constitution and statutory law make the state responsible for funding' an

---

[1] In *Kreipke*, the court concluded that Wayne State University—like the University of Louisville, a public university—was an arm of the state of Michigan and thus not a "person" under the FCA. *See* 807 F.3d at 781.

4

entity, 'that reality makes the state potentially responsible for a judgment against it.'" (quoting *Ernst*, 427 F.3d at 351-52)); *see also Graham v. NCAA*, 804 F.2d 953, 959-60 (6th Cir. 1986) (dismissing claims against University of Louisville and its agents in their official capacities after noting that Eleventh Amendment bars "actions brought against a state agency or state officer where the action is essentially one for recovery of money from the state treasury" (citing *Edelman v. Jordan*, 415 U.S. 651, (1974)).

The Research Foundation presents a closer question. The Court observed in *Solinger* that "because the . . . [Research] Foundation operate[s] within and as part of the University, any judgment against [it] would threaten assets of the state."[2] 457 F. Supp. 2d at 762. At the November 8 hearing, the Court inquired whether the same could be said of the Research Foundation today, a decade after the *Solinger* decision. Though defense counsel was unable to answer that question during the hearing, the defendants' supplemental brief convinces the Court that the answer is yes.

Attached to the defendants' supplemental brief is an affidavit by William M. Pierce Jr., Ph.D., Executive Vice President of Research and Innovation at the University of Louisville. (D.N. 32-1) Pierce avers that the Research Foundation's Articles of Incorporation and bylaws have not been amended since January 2005 and November 2004, respectively; that the Research Foundation is "created and controlled by," and "exists exclusively for the benefit of," the University; and that the Research Foundation's employees, services, board members, and officers all come from the University. (*Id.*, PageID # 1102-03).

---

[2] Although the Court did not include a citation in support of this statement, the opinion states at the outset that the Court "had the benefit of hearing [the parties'] arguments and their answers to questions at a conference in chambers." *Solinger*, 457 F. Supp. 2d at 747.

The defendants also provided copies of the Research Foundation's Articles of Incorporation and Articles of Amendment. (D.N. 32-2, 32-4) As set forth in its Articles of Amendment, the Research Foundation is organized as a nonprofit "affiliated corporation" of the University pursuant to Kentucky Revised Statutes § 164A.610. (D.N. 32-4, PageID # 1113) "Affiliated corporation" is defined by statute as

> a corporate entity which is not a public agency and which is organized pursuant to the provisions of KRS Chapter 273 over which an institution exercises effective control, by means of appointments to its board of directors, and which could not exist or effectively operate in the absence of substantial assistance from an institution.[3]

Ky. Rev. Stat. § 164A.550(3). Under § 164.610, an affiliated corporation must

> pay to, or for the benefit of, the institution any and all funds received by it from any person, corporation, association or governmental agency external to the institution and the affiliated corporation as reimbursement for indirect expenses incurred by the institution in carrying out research or furnishing other goods or services, deducting from such payments only the expenses attributable to the procurement and performance of research grants and contracts and other contracts for the provision of such goods and services and such sums as may be essential to meet contractual obligations incurred at the request of the institution's governing board.

§ 164A.610(3). Thus, the Research Foundation's assets effectively belong to the University. This distinguishes it from the entity at issue in the *Oberg* case cited by Plaintiffs' counsel during oral argument and in their supplemental brief. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646 (4th Cir. 2015).

In *Oberg*, the Fourth Circuit found that although the Pennsylvania Higher Education Assistance Agency (PHEAA) was required to deposit its funds in the state treasury, the agency retained effective control over those funds, and thus the state was not functionally liable for any

---

[3] The University of Louisville is an "institution" within the meaning of the statute. *See* Ky. Rev. Stat. §§ 164A.550(2), 164.810.

6

judgment against PHEAA.[4]  *See id.* at 657-68.  A state may have functional liability for a judgment against an entity, the court explained, "if the funds available to pay any judgment effectively belong to the state rather than the agency." *Id.* at 658.  That is the case here: by statute, the Research Foundation's funds belong to the University, *see* Ky. Rev. Stat. § 164A.610(3), and the University's assets are assets of the Commonwealth.  *See* Ky. Rev. Stat. §§ 164.410, .870.

Plaintiffs protest that federal, not state, funds were implicated by the defendants' conduct. (D.N. 23, PageID # 1022)  But this is true in any FCA case—the purpose of the Act is to "combat[] and deter[] fraud" against the federal government.  *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641 (6th Cir. 2002).  And the question is not whether the defendants' conduct put the state treasury at risk, but whether litigation against them does.  *See Kreipke*, 807 F.3d at 775.  Nor must the Court determine whether the Commonwealth would actually be responsible for a judgment against these defendants; "it is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case, that controls the inquiry." *Id.*  In sum, the "foremost factor" indicates that the University and the Research Foundation are arms of the state.  *Id.* at 776 (citation omitted).

### b. How State Statutes and Courts Refer to the Entities

The second *Ernst* factor also supports the defendants' position.  This factor "includes four considerations: (1) how state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the entity; and (4) the state's veto power over the entity's

---

[4] The court had previously determined that the state had no legal liability in light of a Pennsylvania statute providing that "no obligation of [PHEAA] shall be a debt of the State and [the agency] shall have no power . . . to make its debts payable out of any moneys except those of the corporation."  24 Pa. Stat. § 5104(3) (2016); *see Oberg*, 804 F.3d at 652 (citing *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 138 (4th Cir. 2014)).

actions." *Kreipke*, 807 F.3d at 777 (citing *Ernst*, 427 F.3d at 359). On balance, these considerations weigh in the defendants' favor.

First, Kentucky statutes refer to the University as a state institution or state agency. *See* Ky. Rev. Stat. §§ 44.073 (for purposes of statute regarding sovereign immunity, "state institutions of higher education . . . are agencies of the state"), 164.810 (providing that "the University of Louisville shall be maintained as a state institution"). Kentucky courts likewise refer to it in these terms. *See, e.g.*, *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 305 (Ky. 2014) ("The state universities of this Commonwealth . . . are state agencies that enjoy the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature."). The University is also subject to state control: its trustees are appointed by (and may be removed by) the governor, *see* Ky. Rev. Stat. § 164.821(1); title to its property is vested in the Commonwealth, *see* Ky. Rev. Stat. § 164.870; and it is required to "keep its books and records available to the State Auditor."[5] Ky. Rev. Stat. § 164.026(2).

Though there are no similar statutes governing the Research Foundation, the Foundation's board is effectively appointed by the governor, as its board of directors substantially overlaps with the University's board of trustees. (*See* D.N. 32-1, PageID # 1103; D.N. 32-2, PageID # 1107) In addition, the Foundation "operate[s] from University offices[,] and [its] registered agent is the university counsel." *Solinger*, 457 F. Supp. 2d at 755. (*See* D.N. 32-3) And as an affiliated corporation of the University, the Research Foundation is subject to the University's control. *See* Ky. Rev. Stat. § 164A.550(3).

---

[5] Section 164.821 was amended shortly before the date of this Opinion to provide that Board members appointed by the governor "shall be subject to confirmation by the Senate." 2017 Ky. Acts 7.

The state has veto power over some of the University's actions—for example, any acquisition of real property is subject to approval by the Finance and Administration Cabinet. *See* Ky. Rev. Stat. § 164A.575(6). Some level of independence is "consistent with [the University's] status as a state educational institution." *Kreipke*, 807 F.3d at 778 (independence from political influences "must be maintained in educational matters in order to provide the highest quality education" (quoting *Branum v. Bd. of Regents of Univ. of Mich.*, 145 N.W.2d 860, 862 (Mich. Ct. App. 1966))). In any event, veto power is merely one consideration; it is not essential to a finding that an entity is an arm of the state. *See id.* at 777-78. Because the first three subfactors are met, the second *Ernst* factor weighs in the defendants' favor. *Cf. id.* at 778.

### c. Whether State Officials Appoint Board Members

"If state officials have appointment power, then this factor weighs in favor of finding that the entity is an arm of the state." *Kreipke*, 807 F.3d at 778. As discussed above, the governor appoints the University's board of trustees, *see* Ky. Rev. Stat. § 164.821(1), and those same individuals serve as the Research Foundation's board of directors. (*See* D.N. 32-2, PageID # 1107) Thus, this factor also indicates that the entities are arms of the state.

### d. Whether the Entities' Functions Fall Within the Traditional Purview of State or Local Government

With respect to the final factor, the plaintiffs attempt to distort the inquiry, asserting that "it can hardly be said that Defendant University was performing a traditional government function in its research functions and handling of biohazard agents—it[']s common knowledge that any number of private institutions perform these same functions." (D.N. 23, PageID # 1022) The fourth *Ernst* factor, however, does not ask whether the specific functions at issue are traditionally performed by the state, but rather "the entity's functions" in general. *Kreipke*, 807 F.3d at 775 (quoting *Ernst*, 427 F.3d at 359). And it is well settled that "higher education is a

9

function within the traditional purview of state government." *Id.* at 779 (citations omitted); *see also* Ky. Rev. Stat. § 164.026 (recognizing "the continuing need for education and research in Kentucky"; finding "that the University of Louisville helps to supply, for the entire state, th[at] need" and declaring "that support of the University of Louisville is a public purpose for which public money may be validly expended"). The Research Foundation, in turn, exists to support the University. *See* Ky. Rev. Stat. 164A.610. (*See* D.N. 32-2, PageID # 1105-06; D.N. 32-4, PageID # 1113-14) In sum, all four *Ernst* factors demonstrate that the University and the Research Foundation are arms of the state. These defendants thus do not qualify as "persons" under the FCA, *see Stevens*, 529 U.S. at 787-88, and the plaintiffs' first three claims against them fail.

In attempting to avoid this outcome, the plaintiffs make a puzzling argument that *Stevens* is inapplicable in *qui tam* actions. (*See* D.N. 23, PageID # 1023 ("[A]ssuming, *arguendo*, that the Defendants University and Research Foundation are 'arms of the state[,]' [*Stevens*] held that 'States' are not 'persons' within the meaning of [the FCA] when the claim is initiated by a *private person*. This is distinguishable from the *qui tam* claims brought in this suit." (citation omitted))) But *Stevens* itself was a *qui tam* action; indeed, the *Stevens* Court engaged in a lengthy discussion of the history and function of such actions. *See id.* at 770, 774-77. The *Stevens* plaintiff, like the plaintiffs here, was a private person who brought suit on behalf of himself and the United States. *See id.* at 769-70. *Stevens* thus is not distinguishable on this ground.

Plaintiffs also unnecessarily inject (as do the defendants, occasionally) the issue of Eleventh Amendment immunity, arguing that even if the University and the Research Foundation are arms of the state, they are not entitled to sovereign immunity when the United

10

States is the plaintiff. (*See* D.N. 23, PageID # 1023-24) They rely on a Fourth Circuit case and an Eighth Circuit case, both of which predate *Stevens*, in support of this argument. (*See id.* (citing *U.S. ex rel. Rodgers v. State of Ark.*, 154 F.3d 865, 868 (8th Cir. 1998); *U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 48 (4th Cir. 1992)); *see also* D.N. 11-1, PageID # 980 (asserting that the plaintiffs' retaliation claim "should be dismissed for the same reasons the *qui tam* claims should be dismissed: the [d]efendants are protected by sovereign immunity")) *Rodgers* and *Milam* held that states are not immune from *qui tam* suits. *See* 154 F.3d at 868; 961 F.2d at 48. But *Stevens* obviates the need to consider Eleventh Amendment immunity. The *Stevens* Court deliberately chose to address the statutory issue—whether a state is subject to liability under the FCA—first, "so as to avoid difficult constitutional questions."[6] 529 U.S. at 787. The Court explained:

> The ultimate issue in the statutory inquiry is whether States can be sued under this statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting States can be sued under this statute. This combination of logical priority and virtual coincidence of scope makes it possible, and indeed appropriate, to decide the statutory issue first. We therefore begin (and will end) with the statutory question.

*Id.* at 779-80. Granted, *Kreipke* confused the inquiry somewhat by adopting the arm-of-the-state test normally applied in the Eleventh Amendment context. *See* 807 F.3d at 775; *see also id.* at 781 ("Having affirmed the dismissal of all of the claims against WSU on immunity grounds under the FCA and the Eleventh Amendment . . . ."). But *Stevens* makes clear that for purposes of *qui tam* actions under the False Claims Act, no Eleventh Amendment analysis is necessary because states and their agencies simply cannot be held liable in such actions. *See* 529 U.S. at 787-88. The Court thus need not delve into immunity issues with respect to the plaintiffs' first

---

[6] The Court noted, however, that there was "a serious doubt" as to "whether an action in federal court by a *qui tam* relator against a State would run afoul of the Eleventh Amendment." 529 U.S. at 787 (citation omitted).

three FCA claims. For the reasons discussed above, those claims will be dismissed as to the University and the Research Foundation.

### 2. Retaliation

The FCA provides a cause of action for "[a]ny employee, contractor, or agent" who has been discharged or otherwise discriminated against "because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of" the Act. 31 U.S.C. § 3730(h). As an initial matter, it is not clear that this section applies here, since no violation of the FCA could have occurred in the absence of a "person" under the Act. *See Stevens*, 529 U.S. at 787-88; *United States ex rel. Kreipke v. Wayne State Univ.*, No. 12-14836, 2014 U.S. Dist. LEXIS 159546, at *13-16 (E.D. Mich. Nov. 13, 2014) (dismissing FCA claims, including retaliation claim, on ground that state university was not a "person" for FCA purposes). The claim fails regardless.

Prior to a 2009 amendment, the FCA's retaliation provision authorized suit against an "employer." The purpose of the amendment—which allows an "employee, contractor, [or] agent" to sue—was to expand FCA protection "to persons in employment-like relationships that were not technically 'employees.'" *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014) (citing *United States ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, No. 2:09-1858-RMG, 2012 U.S. Dist. LEXIS 185456, at *9-10 (D.S.C. May 3, 2012), *aff'd*, 475 F. App'x 851 (4th Cir. 2012) (per curiam)). Thus, defendants who lack any "employment[-]type relationship" with a plaintiff, such as the Research Foundation and the researcher defendants here, remain excluded from liability. *Abou-Hussein*, 2012 U.S. Dist. LEXIS 185456, at *10 n.4. And in cases decided since the amendment, courts have continued to hold that states, state agencies, and state officials are immune from FCA retaliation claims, finding that the statute

12

does not manifest a clear congressional intent to waive state sovereign immunity. *See, e.g.*, *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.*, 544 F. App'x 490, 499 (5th Cir. 2013); *United States ex rel. Paris v. Tr. of Ind. Univ.*, No. 1:11-cv-01029-JMS-DKL, 2012 U.S. Dist. LEXIS 86867, at *5 (S.D. Ind. June 22, 2012); *Huang v. Rector & Visitors of the Univ. of Va.*, No. 3:11-cv-00050, 2011 U.S. Dist. LEXIS 145501, at *18-19 (W.D. Va. Dec. 19, 2011) (citing *Bell v. Dean*, No. 2:09-CV-1082-WKW [WO], 2010 U.S. Dist. LEXIS 43618 (M.D. Ala. May 4, 2010)).

Plaintiffs ignore these cases entirely, instead merely asserting that the elements of a retaliation claim are met here and that they should be allowed to proceed because "the intent [of the retaliation provision] was clearly to protect individuals who stand up against fraud perpetuated against the government." (D.N. 23, PageID # 1028) But as an arm of the state under the *Ernst* factors, the University of Louisville is entitled to Eleventh Amendment immunity. *See Kreipke*, 807 F.3d at 775 (same test applies for purposes of sovereign immunity and FCA). "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). No such intention is evident in the FCA's retaliation provision. *See* 31 U.S.C. § 3730(h); *King*, 544 F. App'x at 499; *Paris*, 2012 U.S. Dist. LEXIS 86867, at *5; *Huang*, 2011 U.S. Dist. LEXIS 145501, at *18-19. Thus, this claim will be dismissed as to all defendants.

### B. Researcher Defendants

Defendants Aruni Bhatnagar, Roberto Bolli, Geoffrey Clark, Henry Kaplan, Leslie Sherwood, Charles Scoggins, and Zhao-Hui Song are listed in the complaint with no indication as to whether they are being sued in their official or individual capacities. (*See* D.N. 9, PageID #

514) With respect to Defendant Cheri Hildreth, the amended complaint specifies that she is sued "individually[] and in her capacity as University of Louisville Director of Environmental Health and Safety." (*Id.*) The plaintiffs argue that their failure to identify the other researchers this way does not preclude individual-capacity claims against those defendants. (D.N. 23, PageID # 1025-26) They cite *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), in support.

In *Moore*, the Sixth Circuit adopted the "course of proceedings" test for determining whether, in the § 1983 context, a defendant has been placed on notice of the plaintiff's intent to hold him personally liable. *See id.* at 772. Here, the plaintiffs simply declare that "appropriate notice of Plaintiffs' intent to hold [the researcher defendants] personally accountable was provided in the complaint by explicitly mentioning each doctor as individual defendants [sic] *in addition to* Defendants University and Research Foundation." (D.N. 23, PageID # 1026) *Moore* did not hold that a defendant is on notice of potential individual liability merely by virtue of having been named in the complaint, however. Even alleging in the complaint that a defendant is sued in her individual capacity does not establish an individual-capacity claim where the remainder of the complaint and course of proceedings do not reflect an intent to hold the defendant personally liable. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 537, 543 (1986).

The plaintiffs further argue that they have stated individual-capacity claims against the researcher defendants by alleging that those defendants "knowingly presented, or caused to be presented, multiple false and/or fraudulent claims to the Government for its payment or approval, in violation of the False Claims Act." (D.N. 33, PageID # 1122) They cite *United States ex rel. Jones v. University of Utah Health Sciences Center*, No. 2:11cv1200, 2013 U.S. Dist. LEXIS 137797 (D. Utah Sept. 24, 2013), in support of this argument. The court in *Jones*, however, was

not examining an ambiguous complaint to determine whether it asserted individual-capacity claims; rather, it was addressing the plaintiffs' request to amend their complaint for the sole purpose of asserting individual-capacity claims. *See id.* at *6, *13.

In this case, neither the amended complaint nor the course of proceedings indicates that the researcher defendants could be subject to individual liability. The researcher defendants are accused of wrongdoing in connection with research conducted at and on behalf of the University. (*See, e.g.*, D.N. 9, PageID # 516-17 (describing each researcher defendant other than Hildreth as "an employee of and/or researcher for the Louisville Defendants[]" who "conducted and/or oversaw research for Louisville Defendants")) This includes Defendant Hildreth, who is mentioned only twice in the body of the amended complaint: once to describe her position at the University, and again to allege that as director of the University's Department of Environmental Health and Safety she may have had an "improper agreement" with other (non-defendant) researchers that "only the cover sheet of . . . animal research proposals had been reviewed in order to expedite animal research approvals," in violation of University procedures and OSHA guidelines. (*Id.*, PageID # 529 ¶ 83; *see id.*, PageID # 517 ¶ 16) Each time, Hildreth is identified specifically—and only—by reference to her official role. (*See id.*, PageID # 517 ¶ 16, PageID # 529 ¶ 83) While the Court does not find that individual-capacity claims against state employees are precluded under the FCA, *see Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1123-25 (9th Cir. 2007), it concludes that no such claims have been asserted in this case. *Cf. Martin v. Univ. of Louisville*, 541 F.2d 1171, 1176-77 (6th Cir. 1976) (construing claims against members of university's board of trustees to be official-capacity claims where only alleged wrongdoing was action as board members); *Potterf v. Ohio State Univ.*, No. 2:15-cv-703, 2016 U.S. Dist. LEXIS 6032, at *8-9 (S.D. Ohio Jan. 19, 2016) (finding individually named university

15

researcher not to be "person" under FCA where plaintiff failed to allege that researcher "applied for payments to be made to him personally," but rather alleged that grants were made "to support research by and through the" university, which supervised the grant application and the relevant studies). As an official-capacity suit is effectively a suit against the state, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the FCA claims against the researcher defendants must therefore be dismissed for the reasons stated in Part II.A.1 above.

### III. CONCLUSION

The plaintiffs make an impassioned plea for justice, insisting that it would be unfair for the defendants to obtain federal grant money under false pretenses and then fire the plaintiffs for complaining about it, all without fear of liability. (*See* D.N. 23, PageID # 1023, 1031) This position is not unreasonable, but it is also not consistent with the law at issue here: courts have repeatedly held that state universities and university officials are not liable under the FCA. And the plaintiffs concede that their state-law claims fail. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the Motion to Dismiss Plaintiffs' Amended Complaint (D.N. 11) is **GRANTED**. Plaintiffs' False Claims Act and wrongful-discharge claims are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Their claim under the Kentucky Whistleblower Act is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

January 17, 2017

**David J. Hale, Judge**
**United States District Court**